UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL S. SCHIELE,

    Plaintiff,

v.                                                    CASE NO: 8:16-CV-1330-T-30MAP

SOUTH EAST SHOWCLUBS, LLC,
EMPEROR'S TAMPA II, INC., and
MICHAEL TOMKOVICH, an individual,

    Defendants.
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 24) and Plaintiff's Response in Opposition (Dkt. 26). The Court, having reviewed the motion, response, and being otherwise advised in the premises, concludes that the motion should be denied.

## BACKGROUND

**I. Procedural Background**

Plaintiff Michael S. Schiele, a former employee of Defendants South East Showclubs, LLC and Emperor's Tampa II, Inc., originally filed this action in state court under the Florida Civil Rights Act ("FCRA") and 42 U.S.C. § 1981, alleging retaliation due to his opposition of Defendants' discrimination against black employees. Plaintiff's original complaint named only Defendant Southeast Showclubs, LLC.

On August 11, 2016, Southeast Showclubs removed the action to this Court based upon federal jurisdiction, specifically, the Section 1981 claim. On August 18, 2016, Southeast Showclubs answered the complaint.

The parties participated in the case management conference and began the discovery process. Pursuant to the Case Management Scheduling Order, the discovery deadline is August 15, 2017.

In December 2016, Southeast Showclubs' counsel withdrew from the case and the Court instructed Southeast Showclubs to retain new counsel. New counsel appeared on January 13, 2017. In April 2017, Plaintiff filed a motion to compel based on Southeast Showclubs' failure to respond to outstanding discovery—the motion was subsequently granted by the Magistrate Judge.

On May 24, 2017, Plaintiff filed an unopposed motion to amend the complaint to add Defendant Emperors Tampa II, Inc. and individual Defendant Michael Tomkovich, the owner of Southeast Showclubs and Emperors Tampa. That same day, the Court granted Plaintiff's motion and the amended complaint was filed. Notably, the allegations of the amended complaint remained substantially the same with respect to Southeast Showclubs. The amendment simply asserted the same allegations against Emperors Tampa and Tomkovich and added facts regarding Defendants' corporate structure and relationship.

## II.     Plaintiff's Retaliation Claims against Defendants

Plaintiff's first amended complaint alleges that he was terminated because he refused to fire black staff members and because he directly opposed Defendants' unlawful actions of discriminating against black employees.

With respect to Defendants' corporate structure, Plaintiff alleges that Defendants Southeast Showclubs and Emperors Tampa operate as a single employer and/or as an integrated enterprise. South East Showclubs operates a chain of adult entertainment clubs in Tampa, Florida. Emperors Tampa is one of the adult entertainment clubs organized by Southeast Showclubs. Tomkovich is the sole owner, operator, and manager of Southeast Showclubs and Emperors Tampa.

Plaintiff alleges that club managers were frequently transferred between the adult entertainment clubs within the Southeast Showclubs' chain at the direction of Tomkovich. Tomkovich exercised control over all employee-related matters at Southeast Showclubs and Emperors Tampa including: managing the payroll; receiving cash payouts from the profits of Southeast Showclubs and Emperors Tampa; transferring managers between the clubs; making final decisions regarding employment policies; and overseeing the day-to-day operations of the clubs within the chain.

Plaintiff began working for Defendants on March 21, 2013, as a General Manager. Plaintiff worked in this capacity until his December 27, 2013 termination. During his employment, Plaintiff was instructed by Defendants' Director of Operations, Rob Rice, to begin "thinning the herd," meaning Rice wanted Plaintiff to terminate the black employees. Plaintiff alleges that he refused to discriminate against black employees and instead hired a black female to work the front door. When Tomkovich became aware that Plaintiff had hired a black female, he commented: "fantastic, now I have a nigger door girl." (Dkt. 21).

During his employment, Defendants instructed Plaintiff to charge black entertainers up-front to perform, while similarly-situated Caucasian employees were not charged until

after their performance. Plaintiff alleges that Defendants implemented this policy to dissuade black employees from working, effectively terminating them. Plaintiff further avers that he refused to participate in Defendants' discriminatory practices and openly complained to Defendants about their unlawful actions. Plaintiff alleges that, on December 27, 2013, Defendants terminated Plaintiff because Plaintiff opposed their discriminatory business actions.

Defendants' motion to dismiss argues that Plaintiff's allegations are too conclusory to state a claim of retaliation under the FCRA and Section 1981. The Court disagrees and denies the motion.

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. When reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true, and view the facts in a light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, unlike factual allegations, conclusions in a pleading "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). On the contrary, legal conclusions "must be supported by factual allegations." *Id.* Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## DISCUSSION

To state a prima facie retaliation claim, the employee must show that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) there is a causal relationship between the two. *See Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010) (citing *McDonnell Douglas v. Green*, 411 U.S. 792, 802-04 (1973)).[1] With respect to the causal relationship, a plaintiff must demonstrate "that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013); *see also Smith v. City of Fort Pierce, Florida*, 565 F. App'x 774, 778 (11th Cir. 2014). Generally, in the absence of other evidence, an employee can establish a causal connection by showing a "very close" temporal proximity between the protected activity and the adverse action. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). Also, a plaintiff can establish a causal connection by showing that the defendant was "aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (internal quotation marks omitted).

Here, Plaintiff has adequately alleged a retaliation claim against Defendants. Plaintiff alleges that he engaged in protective activity, i.e., by refusing to participate in Defendants' discriminatory business practices against blacks and by openly opposing Defendants' actions.

---

[1] The elements of a retaliation claim are the same under Title VII, the FCRA, and Section 1981. *See Smith v. City of Fort Pierce, Fla.*, 565 Fed.Appx. 774, 776-77 (11th Cir. 2014) (noting same).

Plaintiff also alleges that Defendants terminated him because he engaged in this protective activity.

Although Plaintiff's amended complaint arguably could have included more detail, such as specific dates and who he spoke to specifically, the Court concludes that Defendants have been sufficiently placed on notice of the claims and the grounds upon which the claims rest. Notably, Plaintiff's employment spanned less than one year, so the facts are relatively simple. The Court's conclusion is also influenced by the fact that Defendant South East Showclubs previously answered the original complaint, which raised the same allegations. In other words, South East Showclubs never moved to dismiss the complaint and never argued that the allegations were insufficient, so its current argument that the allegations are too vague to place it on notice seems disingenuous. Moreover, the parties have already engaged in discovery and the discovery deadline is in less than two months from the date of this Order.

Finally, with respect to Tomkovich, Plaintiff has alleged enough facts to establish his individual liability under Section 1981 at this stage. Plaintiff avers that Tomkovich was personally involved in the clubs' business operations, managed the employees, participated in employment matters, made a racial comment about Plaintiff hiring "a nigger door girl," and took no remedial action when Plaintiff complained about the discrimination. (Dkt. 21).

It is therefore **ORDERED AND ADJUDGED** that:

1. Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 24) is denied.

2. Defendants shall file their answers to Plaintiff's First Amended Complaint within fourteen (14) days of this Order.

**DONE** and **ORDERED** in Tampa, Florida on June 30, 2017.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>Copies furnished to</u>:
Counsel/Parties of Record