UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MICHAEL S. SCHIELE,**

    **Plaintiff,**

v.                                    Case No.: 8:16-CV-02308-JSM-MAP

**SOUTHEAST SHOWCLUBS, LLC,
EMPEROR'S TAMPA II, INC., and
MICHAEL TOMKOVICH,**

    **Defendants.**

_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rules of Civil Procedure 56(a), Defendants, SOUTHEAST SHOWCLUBS, LLC, a Florida limited liability company, (hereinafter "Defendant South East Showclubs, LLC") EMPEROR'S TAMPA II, INC., a Florida Corporation, (hereinafter "Defendant Emperors") and MICHAEL TOMKOVICH, (hereinafter "Defendant Tomkovich") an individual, by and through their undersigned counsel, respectfully moves for summary judgment as to all the claims being assert by the Plaintiff against Defendants, and would state as follows:

### I.    BACKGROUND

On May 24, 2017, Plaintiff filed his First Amended Complaint (Doc. 21) (hereinafter "Complaint") against his former employer, purportedly **all** Defendants, alleging that he "refused to participate in Defendants' discriminatory practices, and even openly complained to Defendants about its unlawful business activities…Defendants terminated Plaintiff's employment in retaliation for engaging in protected activity." (Doc. 21, ¶ 28, 30). Plaintiff attempts to assert one count of

1

retaliation under the Florida Civil Rights Act of 1992, Section 760.01, et seq., Florida Statutes ("FCRA") against Defendant Southeast Showclubs, LLC, and Defendant Emperors and one count of retaliation under the Civil Rights Act of 1871, as amended, 42 U.S.C. Section 1981 ("Section 1981") against all Defendants. (Doc. 21). Defendant Emperor's establishment is a nightclub and lounge.

In the record before this Court, the Plaintiff has failed to show credible evidence of the existence of a material fact in dispute and ultimately lacks a *prima facie* case for any counts of retaliation. Accordingly, the Defendants move for summary judgment on any and all presumed causes of action asserted in the Complaint.

## II. **STATEMENT OF UNDISPUTED FACTS**

a. Plaintiff Schiele worked for Defendant Emperors during the relevant times of this alleged action. (Doc. 37-1-Rice Depo. Page 26, Lines 1-3); (Doc. 39-1-Schiele Depo. Page 20, Lines 11-19).

b. Plaintiff began working for Defendant Emperors on or about March 21, 2013, as a manager. (Doc. 39-1-Schiele Depo. Page 20, Lines 17-19).

c. Plaintiff was a manager for Defendant Emperors and his job duties included, the overall safety of the establishment, opening and closing the establishment, accounting for the money in the registers, scheduling employees, and the independent contractors. (Doc. 38-1-Tomkovich Depo. Page 30, Lines 15-25).

d. Defendant Tomkovich is an individual, along with being the titled Director for Defendant Emperors and the Manager for Defendant Southeast Showclubs,

LLC. (Exhibit "A"-Florida Corporate Registration Documents for both Defendants).

e. Plaintiff was not employed by Defendant Southeast Showclubs, LLC, as it did not own any business, or have any employees. The entity was created as a business concept but never engaged in business. (Exhibit "A"); (Exhibit "B"-Declaration of Jenny Adams); (Tomkovich Depo. Page 7, Lines 2-7; Page 24, Lines 22-25; Page 25, Lines 1-15; Page 31, Lines 15-21).

f. The name Southeast Showclubs (without the "LLC") was simply an overarching term used to encompass a group of nightclubs that advertised jointly, but is not the same as the named Defendant Southeast Showclubs, LLC. (Doc. 37-1-Rice Depo. Page 21, Lines 1-3); (Exhibit "C"- Copy of an advertising card for South east Showclubs); (Doc. 39-1-Tomkovich Depo. Page 21, Lines 4-10).

g. At all times relevant to this cause of action in 2013, Defendant Emperors had, at the most, 13 employees. (Exhibit "B").

h. Plaintiff was required to fill out the employee leasing application from Convergence Employee Leasing, Inc., as Plaintiff was employed through that employee leasing company and subject to the terms and conditions of that employment. (Exhibit "D"-A copy of the Employee Leasing Application).

i. A portion of Plaintiff's signed application contained "General Safety Rules" which included the following contractual provision: "Employees under the influence of drugs or alcohol on-the-job will be subject to immediate discharge." Plaintiff signed his name and acknowledged the form, which stated that, "I have read these rules (or I had them read to me), and understand them and will obey

them for my benefit." (*Id.*) Therefore, Plaintiff was on notice that being under the influence of drugs and alcohol on the job would result in "immediate discharge." (*Id.*).

j. Plaintiff was also given a "Notice of Drug & Alcohol Testing," which stated:

> "The illegal use of drugs and the abuse of alcohol are problems that invade the workplace, endangering the health and safety of the abusers and those who work around them, this company is committed to creating and maintaining a workplace free of substance abuse without jeopardizing valued employees' job security…Our policy formally and clearly states that the illegal use of drugs or abuse of alcohol or prescription drugs will not be tolerated." (*Id.*)

k. Defendants also employed a policy that "stealing" was grounds for termination. (Doc. 38-1-Tomkovich Depo. Page 37, Lines 11-20).

l. Rob Rice was the general manager of Defendant Emperors and supervisor of the Plaintiff. (Doc. 38-1-Tomkovich Depo. Page 20, Line 18-22).

m. On several occasions during Plaintiff's employment, he was verbally reprimanded and presented with written write-ups from the manager, Rob Rice, for several reasons, including: his poor performance; his paperwork was never correct; the money (accounting) was never correct; he abused his "power of authority" to threaten girls if they didn't "party" with him or meet him "after hours," and he admitted, under oath, to rampant illicit marijuana drug use ***during working hours.*** (Doc. 37-1-Rice Depo. Page 18, Lines 1-5; Page 31, Lines 18-25; Page 32, Lines 1-6); (Doc. 38-1-Tomkovich Depo. Page 16, Lines 23-25; Page 17, Lines 1-10; Page 19, Lines 9-17).

n. Plaintiff admits to "smoking pot" on his breaks while on shifts employed with Defendant Emperors. (Doc. 39-1-Schiele Depo. Page 68, Lines 5-18).

4

o. Plaintiff admits to drinking "quite a few drinks" while on shifts employed with Defendant Emperors. (Doc. 39-1-Schiele Depo. Page 52, Line 6-25).

p. Plaintiff stole and drank Jameson Irish Whiskey while on duty at shifts employed at Defendant Emperors. (Doc. 37-1-Rice Depo. Page 18, Lines 12-13; Page 19, Lines 1-6 and 19-21); (Exhibit "E"-Defendant Emperors internal emails dated July 23, 2013, and September 23, 2013, which show a bottle of Jameson missing during each inventory accounting).

q. Due to his poor performance and violations of the Defendants' policies, Plaintiff was changed from manager to "disc jockey" by Rob Rice, the General Manager, on or about December 31, 2013. (Doc. 37-1-Rice Depo. Page 16, Lines 5-20); (Doc. 38-1-Tomkovich Depo. Page 38, Line 1-18).

r. Plaintiff refused to accept what he viewed as a demotion and therefore "quit" his employment at Defendant Emperors. (Doc. 37-1-Rice Depo. Page 16, Lines 5-20); Doc. 38-1-Tomkovich Depo. Page 38, Line 1-18).

s. Plaintiff believed that the reason he was subjected to an "adverse action" by Defendants was because they thought he was a "sh*tty manager". (Exhibit "F"-Text messages between Plaintiff and a colleague).

t. Plaintiff never complained of any of Defendants' policies in place. (Doc. 38-1-Tomkovich Depo. Page 36, Lines 9-12).

### III. **<u>MEMORANDUM OF LAW</u>**

**A. Standard of Review**

Summary judgment is appropriate where "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Shedrick v. District Board of Trustees of Miami-Dade College*, - - F.Supp. 2d - -, 2013 WL 1748789 (S.D. Fla. Apr. 23, 2013). Once the moving party satisfies its burden, "the non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs. LLC*, 327 F. App'x 819, 825 (11th Cir. 2009)(quoting *Matshita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-moving party "must produce evidence, going beyond the pleadings," to demonstrate that a reasonable jury could find in their favor at the time of trial. *Shiver v. Shertoff*, 549 F. 3rd 1342, 1343 (11th Cir. 2008)).

A "fact is 'material' if, under the inexplicable substantive law, it would affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co., Inc.* 357 F.3d 1256, 1259 (11th Cir. 2004). A factual dispute is "genuine" only "if the record taken as a whole could lead a rational trier fact to find for the non-moving party." *Id.* at 1260. As such, evidence that is "merely colorable" or of insufficient weight cannot create a "genuine" issue for trial. The evidence must be of significant weight or quality to support a jury verdict for the non-moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 257 (1986).

As set forth more fully herein, since there is no genuine issue of material fact and the Plaintiff has failed to go beyond the initial pleadings, Defendants are entitled to an entry of summary judgment on all of Plaintiff's claims.

> **B. Defendant Southeast Showclubs, LLC, and Defendant Emperors are Entitled to Summary Judgment on Count 1 (FCRA Retaliation) Because Defendants do not Meet the Definition of "Employer."**

The Florida Civil Rights Act provides ("FCRA") that it is unlawful for an employer:

To discharge or fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status. § 760.10(1)(a), Fla. Stat. (1992). "Employer" is further defined as "any person employing 15 or more employees for each working day in each of 20 or more calendar weeks in the current or proceeding calendar year, and any agent of such a person." § 760.02(7), Fla. Stat. (1992) (emphasis added). As the definition of employer is essentially identical to that in Title VII of the Federal Civil Rights Act, *see* 42 U.S.C. § 2000e(b), interpretations of Title VII are persuasive in interpreting the Florida Civil Rights Act. *Byrd v. Richardson-Greenshields Sec., Inc.,* 552 So.2d 1099, 1104 (Fla.1989) (applying Title VII interpretations to an earlier version of the FCRA); *see also Byrd v. BT Foods, Inc.,* 948 So.2d 921, 925 (Fla. 4th DCA 2007); *Patterson v. Consumer Debt Mgmt. & Educ., Inc.*, 975 So. 2d 1290, 1291 (Fla. Dist. Ct. App. 2008)

Defendant Southeast Showclubs, LLC, is not a business, nor does it have any employees. (Exhibit "A"); (Exhibit "B"-Declaration of Jenny Adams); (Tomkovich Depo. Page 7, Lines 2-7; Page 24, Lines 22-25; Page 25, Lines 1-15; Page 31, Lines 15-21). The entity was created as a business concept, but never came to fruition. *Id*. The name South East Showclubs without the LLC was simply an overarching term used to encompass a group of nightclubs that advertised jointly. (Doc. 37-1-Rice Depo. Page 21, Lines 1-3); (Exhibit "C"- Copy of an advertising card for Southeast Showclubs); (Doc. 39-1-Tomkovich Depo. Page 21, Lines 4-10).

At all times relevant to this cause of action, in 2013, Defendant Emperors had, at the most, 13 employees. (Exhibit "B").

Therefore, Plaintiff fails to meet the numerosity requirement to put forth a *prima facie* case of retaliation under the FCRA, since Defendant Southeast Showclubs, LLC and Defendant

7

Emperors are "not employers," not having the requisite 15 or more employees. For the foregoing reasons, Defendant Southeast Showclubs, LLC, and Defendant Emperors are entitled to granting summary judgment on Plaintiff's Count 1 for Retaliation under the FCRA.

**C. Defendants Are Entitled to Summary Judgment Dismissing Plaintiff's Claims for Retaliation Under Both Counts Because Plaintiff Failed to Put Forth Evidence that Defendants were aware of any Protected Conduct by the Plaintiff**

Analytically, retaliation claims under both Title VII and the FCRA require the same basic showing — that: (1) plaintiff engaged in protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between his protected activity and the adverse employment action. *See Pennington v. City of Hunsiville*, 261 F.3d 1262, 1266 (11th Cir. 2001); *Wofsy v. Palnishores Ret. Cmty.*, 285 Fed. Appx. 631, 634 (11th Cir. 2008). To establish that he engaged in protected activity, a plaintiff must show he had a subjective, good-faith belief that the employer engaged in unlawful employment practices under the statute in question and his belief was objectively reasonable in light of the facts. *See Harper*, 139 F.3d at 1388. To establish the required causation link, plaintiff must, at a minimum, "demonstrate that 'the decision-maker[s] [were] aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated.'" *McCann v. Tillman,* 526 F.3d 1370, 1376 (11th Cir. 2008), *cent. denied, McCann v. Cochran,* 129 S. Ct. 404 (2008) (citation omitted). Additionally, a retaliation claim fails as a matter of law if there is a substantial delay between the protected activity and the adverse action, in the absence of other supporting facts. *See Higdon v. Jackson,* 393 F.3d 1211, 1220 (11th Cir. 2004). Last month, the U.S. Supreme Court further heightened the burden of proof for employees bringing retaliation claims by holding that employees have to prove that the employer's desire to retaliate was the "but-for" cause for the employer's adverse employment action in the

context of a Title VII case. *See Univ. of Tex. Southwestern Med. Ctr. v. Nassar,* 133 S. Ct. 2517 (2013).

Courts have narrowly interpreted the "causal link" requirement. See, *Smith v. City of Fort Pierce*, 565 Fed. Appx. 774 (11th Cir. 2014) citing *University of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct. 2517 (2013). Plaintiffs must now establish that their protected activity was a "but-for" cause of the alleged adverse action by the employer. *Id.* In other words, the Plaintiff must show that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action of the employer. *Id*. at 2532-33. The Court must focus on the motivation of the decision maker and not whether the legitimate belief was mistaken. *Id.* In *Smith*, the 11th Circuit upheld the district court's grant of summary judgment that the alleged protected activity was not the "but for" cause of the alleged unlawful retaliation, because the city manager testified he fired the employee for attempting to bribe a city official. *Smith*, 565 Fed. Appx. 779. The fact that the plaintiff disputed the bribe was inconsequential. *Id*. The 11th Circuit opined that the inquiry is based on the decision maker's reasons for the adverse action, not whether the reason was good, bad, or based on erroneous facts, and the decision maker can have no reason at all, as long as it is not a discriminatory one. *Id.* Plaintiff cannot establish a causal connection between his alleged protected activity and adverse action taken by Defendants and, thus, he has not stated a *prima facie* case of retaliation.

In the instant case, Plaintiff alleges he was told by "corporate that we were to start, you know collecting house fees from the African American dancers and that the white ones could pay later.". (Doc. 39-1-Schiele Depo. Page 44, Lines 7-25). Plaintiff asserts that he opposed such action by "not doing it." (*Id*.). However, Plaintiff never clarifies who told him this and fails to state that Defendants had such notice of his alleged opposition. There is no evidence that the alleged

9

retaliation/demotion occurred solely based on the alleged opposition Plaintiff had to nebulous racial issues (Plaintiff is Caucasian). The only statement that Plaintiff advances to attempt to connect Plaintiff's demotion to his alleged opposition to alleged wrongful racially driven business practices is that he states he was "fired" a ***month*** after. (Doc. 39-1-Schiele Depo. Page 37, Lines 1-6). Instead, Defendants allege that Plaintiff's transition to "DJ" was based on legitimate nondiscriminatory reasons of which ***Plaintiff has admitted himself*** of being guilty of engaging in several times, all of which were bases for immediate termination! (Doc. 37-1-Rice Depo. Page 18, Lines 1-5; Page 31, Lines 18-25; Page 32, Lines 1-6); (Doc. 38-1-Tomkovich Depo. Page 16, Lines 23-25; Page 17, Lines 1-10; Page 19, Lines 9-17); (Doc. 39-1-Schiele Depo. Page 52, Line 6-25).

Plaintiff has failed to meet the requirement to show that Defendants were aware of his alleged protected activity in order to prove a causal link between the adverse action and the protected activity. *See, Diaz v. Miami Dade County*, 2010 WL 3927751 (S.D. Fla. Aug. 17, 2010) (granting the county's motion for summary judgment on plaintiff's retaliation claim in part because the plaintiff failed to show that the decision maker knew about the protected activity prior to taking the alleged adverse action.) See, also *Johnson v. Florida*, 2010 WL 1328995 (M.D. Fla. Mar. 30, 2010) holding "courts will not presume a decision maker's motivation was retaliation by something unknown to him." Defendants were not aware of Plaintiff's alleged protected activity and Plaintiffs failure to create a genuine issue of fact on this element entitles all Defendants to an entry of summary judgment on Count I-under the FCRA, and Count II-under Section 1981.

### D. Even Assuming a Prima Facie Case of Retaliation was Satisfied, Plaintiff Did Not Present Sufficient Evidence that Defendants' Legitimate Nondiscriminatory Reason for the Adverse Action to Plaintiff Was a Pretext

Plaintiff asserts that Defendants retaliated against him by terminating him after Plaintiff opposed the alleged discriminatory practices of the Defendants. Even assuming such a claim is viable, Plaintiff's claims fail on their merits. Even if a Plaintiff has made a *prima facie* case of retaliation, "the burden of production shifts to the defendant to rebut the presumption by articulating a legitimate, nondiscriminatory reason for the adverse employment action." *Brown v. Alabama Dept. Of Transp.,* 597 F.3d 1160, 1181 (11th Cir.2010). If the defendant is able to successfully rebut the presumption of retaliation, then the burden shifts back to the plaintiff to show that the defendant's purported reasons are a mere pretext for retaliation. *See id,* at 1181–82. Once the employer establishes a legitimate non-retaliatory reason, the burden shifts back to the Plaintiff to show that the reason given was *false* or that a reasonable fact finder would conclude it lacked credibility. *Jefferson*, 505 Fed. Appx. 830, 834 (11th Cir. 2013) citing *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1162-63 (11th Cir. 2006). The plaintiff must meet the employer's reason head on and rebut it and may not "simply quarrel with the wisdom of the reason." *Jefferson*, 505 Fed. Appx. at 833. For instance, a plaintiff may point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons." *Jackson v. State of Ala. State Tenure Comm'n,* 405 F.3d 1276, 1289 (11th Cir.2005) (internal quotation marks omitted). However, "federal courts do not sit as a super-personnel department that reexamines an entity's business decisions," and a plaintiff may not establish pretext merely by quarreling with the wisdom of an employer's decision. *Chapman v. AI Tramp.,* 229 F.3d 1012, 1030 (11th Cir.2000); *Lewis v. City of St. Petersburg*, No. 8:14-CV-2547-T-27TGW, 2015 WL 3618525, at *6 (M.D. Fla. June 9, 2015).

In the instant case, the record reflects that Defendants had a legitimate and non-retaliatory basis for Plaintiff's termination. Plaintiff was transitioned to DJ because of his

consistent insubordination, for drinking, and for smoking marijuana on the job. In addition, his performance was poor, his paperwork was never correct, the "money" (accounting) was never correct, and he abused his power of authority to threaten girls if they didn't "party" with him or meet him after hours. (Doc. 37-1-Rice Depo. Page 18, Lines 1-5; Page 31, Lines 18-25; Page 32, Lines 1-6); (Doc. 38-1-Tomkovich Depo. Page 16, Lines 23-25; Page 17, Lines 1-10; Page 19, Lines 9-17).

Plaintiff does not point to any legitimate, much less sufficient evidence of any pretext. Plaintiff admitted during his deposition that he had, in fact, consumed alcohol on the job and smoked "pot" during his breaks at work. (Doc. 39-1-Schiele Depo. Page 68, Lines 5-18); (Doc. 39-1-Schiele Depo. Page 52, Line 6-25). Specifically, Plaintiff states in his deposition,

```
 6   Q.  All right.  Now, we listened to Mr. Rice this
 7   morning indicate that the primary reason that he made
 8   the decision to terminate you was because of things
 9   other than racially charged issues.  He mentioned
10   drinking.  Did you drink on the job while you were at
11   Emperor's?
12      A.  Yeah.  I mean, honestly, it's -- look, this is
13   the strip club business, and I'm not going to sit here
14   and pretend to be a choir boy.  Nobody in that company
15   was.
16          In fact, SES is an extremely toxic culture.
17   You heard Mike admit himself he's fired a lot of people.
18   He's burned through a lot of people.
19          It's not a very -- it's a very high stress,
20   very toxic environment.  Everybody there is doing
21   something.  Something.
22          Was I drunk on the job?  No.
23          But, you know, it's an old adage in the strip
24   club business.  When a customer wants to buy you a drink
25   you take that drink.  You ring it in that drawer.
```
(Doc. 39-1-Schiele Depo. Page 52, Lines 6-25).

```
 1   Q.  How often would customers buy you drinks?
 2      A.  My customers liked me.  I'm a fun guy.  So I'm
 3   sure they bought me -- I'm sure they bought me quite a
```

    4   few drinks in the day. (Doc. 39-1-Schiele Depo. Page 53, Lines 1-4).

    **5**    **Q.  Well, I think you'd agree with me that there's**
    6   been some testimony today that you might have used drugs
    7   while you were on the job; is that true?
    8     A.  Other than smoking a little pot, but not -- I
    9   mean, on the job, no. On my breaks and stuff, yeah, I
   10   smoke a little weed, but not on the premises.
   **11**    **Q.  Where would you smoke it?**
   12     A.  In my car, down the street, whatever, go for a
   13   ride. You're working 12, 14 hour days, you're entitled
   14   to go have a little lunch break. So what I do in the
   15   parking lot of a Wendy's is kind of my business.
   **16**    **Q.  Would it ever occur on the premises of the**
   **17**   **business?**
   18     A.  Not outside of my car. (Doc. 39-1-Schiele Depo. Page 68, Lines 5-18).

To the extent that Plaintiff disagreed with the complaints about his performance and the basis behind his adverse treatment, Plaintiff does not point to anything specific that was incorrect or false; in fact, Plaintiff admits to the precise explanations that Defendants gave for the alleged "adverse action" towards Plaintiff. After Plaintiff was "demoted," he states in a text message with a colleague, Mack Cooper, that, "How wonderful. Fired by a guy who thinks I'm a shitty manager. Yet they are still using all my ideas, promotions and maintenance suggestions. Just great glad I moved to Tampa just to get fired 4 months later." (Exhibit "F"). At the time of his "demotion," Plaintiff felt he was being fired for being a "shitty manager," it seems suspiciously convenient that Plaintiff now asserts that his demotion was due to retaliation. Plaintiff's newly acquired belief that the complaints and his demotion were premised on his alleged opposition to the discriminatory actions of Defendants, even if legitimate, are insufficient to establish a pretext. *See Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1332–33 (11th Cir.1998); *Holifield v. Reno,* 115 F.3d 1555, 1565 (11th Cir.1997)(Plaintiff's own evaluations and opinions about his ultimate termination are insufficient to establish pretext.).

In conclusion, it is important to note that the Eleventh Circuit stresses the following on pretext:

> Title VII does not require the employer's needs and expectations to be objectively reasonable; it simply prohibits the employer from discriminating on the basis of membership in a protected class. We do not sit as a "super-personnel department," and it is not our role to second-guess the wisdom of an employer's business decisions-indeed the wisdom of them is irrelevant-as long as those decisions were not made with a discriminatory motive. *Chapman,* 229 F.3d at 1030. That is true "[n]o matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers." *Id.* (quotation marks and citations omitted); *see also Nix v. WLCY Radio/Rahall Commc'ns,* 738 F.2d 1181, 1187 (11th Cir.1984) ( "[An] employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."); *Wallace v. SMC Pneumatics, Inc.,* 103 F.3d 1394, 1399 (7th Cir.1997) (listing, among "embarrassing" but non-actionable reasons under Title VII, "nepotism, personal friendship, the plaintiff's being a perceived threat to his superior, a mistaken evaluation, the plaintiff's being a whistleblower, the employer's antipathy to irrelevant but not statutorily protected personal characteristics, a superior officer's desire to shift blame to a hapless subordinate ... or even an invidious factor but not one outlawed by the statute under which the plaintiff is suing; ... or there might be no reason"). *Alvarez v. Royal Atlantic Developers, Inc.,* 610 F.3d 1253, 1266–67 (11th Cir.2010). Accordingly, the retaliation claim fails as a matter of law on the merits. *Bostick v. CBOCS, Inc.,* No. 8:13-CV-1319-T-30TGW, 2014 WL 3809169, at *7–8 (M.D. Fla. Aug. 1, 2014).

Plaintiff's subjective opinion or speculation that Defendants actions were retaliatory, without supportive evidence, is insufficient to establish pretext and avoid summary judgment. *Carter* v. *City of Miami,* 870 F.2d 578, 585 (l1th Cir. 1989). Moreover, Plaintiff cannot recast the reasons for Defendants' actions as pretextual simply because he disagrees:

> A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason. *Chapman* v. *AI Transport,* 229 F.3d 1012, 1030 (11th Cir. 2000) *(en bane).*

In this case, the Defendants have provided a legitimate business reason for eliminating the Plaintiff's position: because of his job performance, including but not limited to, his alcohol and illegal drug use on the business premises and during working shifts. The Plaintiff has conceded this point in his deposition and has not provided any evidence to show that this reason was a pretext. Thus, Plaintiff fails to establish the legitimate business reason for his demotion was false.

The Plaintiff has the ultimate burden of proving retaliation and conclusory allegations of retaliation without more are insufficient to carry her burden. *Mayfield v. Patterson Pump Co.*,101 F.3d 1371, 1376 (11th Cir. 1996). Therefore, Defendants should be granted summary judgment on count I and II for retaliation.

### E. Defendant Michael Tomkovich is Entitled to an Entry of Summary Judgment Because Plaintiff Cannot Establish Individual Liability under Section 1981

Plaintiff has purposefully added Defendant Michael Tomkovich, as an individual, presumably named because he is the Manager of Defendant Southeast Showclubs, LLC and is also the Director of Emperors Tampa II. That said, to establish a claim for individual liability under § 1981, a plaintiff must demonstrate "some affirmative link to causally connect the actor with the discriminatory action." *Allen v. Dnever Pub. Sch. Bd.,* 928 F.2d 978, 983 (10th Cir.1991), overruled on other grounds, *Kendrick v. Penske Transp. Servs., Inc.,* 220 F.2d 1220, 1228 (10th Cir.2000); *see also Patterson v. County of Oneida, N.Y.,* 375 F.3d 206, 229 (2d Cir.2004) (quoting *Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 75 (2d Cir.2000)). The claim must be "predicated on the actor's personal involvement." *Allen,* 928 F.2d at 983. Personal involvement may be satisfied by proof that the individual had knowledge of the alleged acts of discrimination and failed to remedy or prevent them. *See Patterson,* 375 F.3d at 229; *Amin v. Quad/Graphics, Inc.,* 929 F.Supp. 73, 78 (N.D.N.Y.1996); *Figures v. Bd. of Pub. Utilities of Kansas City, Kan.,*

731 F.Supp. 1479, 1483 (D.Kan.1990); *Wallace v. DM Customs, Inc.*, No. 8:05-CV-115-T-23TBM, 2006 WL 2882715, at *7 (M.D. Fla. Oct. 6, 2006).

Under 42 U.S.C. § 1981, a Defendant's individual liability **must be based on his individual discriminatory or retaliatory actions**. *Hull v. Colorado Bd. of Governors of Colorado State University System,* 805 F.Supp.2d 1094, 1104–05 (D.Colo.2011) (emphasis added, stating, "[p]ersonal participation is an essential element of any individual liability claim under [§ 1981] claim."). *Perkins v. Fed. Fruit & Produce Co.*, 945 F. Supp. 2d 1225, 1254 (D. Colo. 2013).

Baed on the most generous view of the record in this action, Plaintiff has failed to show Defendant Michael Tomkovich's "personal involvement" in any alleged retaliation. As stated more fully above, Plaintiff fails to create a genuine issue of fact that Defendant Tomkovich had any knowledge of Plaintiff's alleged protected activity and, thus, cannot support the causal link required for retaliation under either FCRA or Section 1981. Since Plaintiff has woefully failed to put on sufficient evidence that a trier of fact might find that the legitimate reasons for Plaintiff's demotions were pretextual, Defendant Tomkovich is entitled to an entry of summary judgment, individually, under Count I.

## CONCLUSION AND REQUEST FOR RELIEF

Given the undisputed nature of facts presented in the record concerning Plaintiff's failure to meet the *prima facie* elements of retaliation under both FCRA and Section 1981, coupled with Plaintiff's inability to rebut Defendants legitimate nonretaliatory reasons for the alleged "adverse action" against Plaintiff, this Honorable Court should conclude that there are no genuine issue of material facts on these issues and enter summary judgment in Defendants' favor.

For the foregoing reasons, Defendants respectfully move this Court for an entry of Summary Judgment, dismissing all of Plaintiff's claims against Defendant Southeast Showclubs,

LLC, Defendant Emperors Tampa, Inc., II, and Defendant Michael Tomkovich in his induvial capacity, and grant such other and further relief as is just and proper.

Respectfully Submitted,

/s/Luke Lirot_____
Luke Lirot, Esq.
Florida Bar Number 714836
LUKE CHARLES LIROT, P.A.
2240 Belleair Road, Suite 190
Clearwater, Florida 33764
Telephone: (727) 536-2100
Facsimile: (727) 536-2110
*Attorney for the Defendants*
luke2@lirotlaw.com  (primary e-mail)
justin@lirotlaw.com  (secondary e-mail)
jimmy@lirotlaw.com (secondary e-mail)

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 22, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all parties in this case.

/s/Luke Lirot_____
Luke Lirot, Esquire
Florida Bar Number 714836
